UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROFESSIONAL MERCHANT ADVANCE
CAPITAL, LLC,

                    Plaintiff,

-v-

C CARE SERVICES, LLC., *et al.*,

                    Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-15-15

No. 13-cv-6562 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Professional Merchant Advance Capital, LLC ("Plaintiff") brings this action against C Care Services, LLC, C Care Medical Center LLC, and C Care Medical Supply LLC (collectively, "C Care"), as well as Cecilia de Leon Sobier ("Sobier," and, together with C Care, "Defendants"), asserting claims for breach of contract, breach of guarantee, unjust enrichment, and account stated stemming from C Care's failure to make monthly payments as required under a merchant agreement between the parties (the "Agreement"). (Doc. No. 22 ("Second Amended Complaint" or "SAC").) Now before the Court is Plaintiff's unopposed motion for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

I.  BACKGROUND

A.  Facts[1]

On March 6, 2012, C Care Services and Plaintiff entered into the Agreement, under which Plaintiff agreed to transfer to C Care $1,084,850 (the "Purchase Price") in exchange for C Care

---

[1] The following facts are drawn from Plaintiff's Local Civil Rule 56.1 Statement. (Doc. No. 69 ("56.1 Stmt.").). The Court notes that the 56.1 Statement is actually styled as, "pursuant to New York Rules of the Commercial Division of the Supreme Court 202.70(g), Rule 19-a(d), [a] Separate Statement of Undisputed Material Facts." However, it appears to comply with all requirements of Local Rule 56.1, and so the Court accepts it as a Rule 56.1 statement. As

transferring to Plaintiff all of C Care's "future accounts, contract rights and other obligations arising from or relating to the payment of monies from [C Care's] customers and/or other third party payors," until a total of $1,317,700 (the "Purchased Amount") was paid to Plaintiff.[2] (56.1 Stmt. ¶¶ 1–2.) Regardless of the amount of accounts receivable, the Agreement required C Care to make a minimum weekly payment of $35,000 until the Purchased Amount was paid in full. (*Id*. ¶ 3.) Additionally, the Agreement obligated C Care to pay all costs incurred by Plaintiff in enforcing the Agreement, including reasonable attorneys' fees. (*Id*. ¶ 12.) Sobier unconditionally guaranteed C Care's performance under the Agreement. (*Id*. ¶ 11.)

The success of the parties' relationship did not last long. Although Plaintiff paid the full Purchase Price, C Care was unable to fulfill to its obligation to pay Plaintiff $35,000 each week. (*Id*. ¶¶ 6–7.) In fact, the last time C Care rendered the $35,000 minimum payment in full was May 2012, just two months after the parties entered the Agreement. (*Id*. ¶ 7.) At some point thereafter, Plaintiff proposed a modification to the Agreement that would reduce Defendants' weekly payment to $5,000. (*Id*. ¶ 10.) However, the modification was contingent on Defendants actually making the modified weekly payments, and included a provision stating that it would be void if Defendants failed to do so. (*Id*.) Although it is not entirely clear from Plaintiff's moving papers

---

to the facts referenced herein, the Court has fulfilled its independent obligation to satisfy itself "that the citation to evidence in the record supports the assertion." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). In deciding the motion, the Court also considered Plaintiff's memorandum of law in support of its motion (Doc. No. 66 ("Pl. Mem.")), along with the affidavits and exhibits attached thereto.

[2] Plaintiff's 56.1 statement indicates that the Agreement was entered into on March 6, *2006*, rather than that date in 2012. (56.1 Stmt. ¶ 1.) However, the date referenced on the executed Agreement itself is March 6, 2012 (*see* Affidavit of Marwan Salem dated Dec. 2, 2014, Doc. No. 68 ("Salem Affidavit"), Ex. A ("Agreement")), and both the Salem Affidavit and Plaintiff's memorandum of law in support of the instant motion also state that the Agreement was entered into in 2012 (*see* Salem Affidavit ¶ 2; Pl. Mem. at 3). Accordingly, it appears that the reference to 2006 in the 56.1 statement is a typographical error. Additionally, although Plaintiff's brief states that Plaintiff paid a purchase price of $1,317,700, the Agreement appears to indicate that the *Purchase Price* was $1,084,850, and the *Purchased Amount* was $1,317,700. (*See* Agreement.) In any event, except where otherwise noted, these two discrepancies were not relevant to the instant decision.

whether this modification was actually entered into, it is undisputed that Defendants have failed to make weekly payments of even $5,000. (*Id.* ¶ 10.) Accordingly, Defendants continue to be bound by the terms of the unmodified Agreement. As of December 2, 2014, Defendants owed an outstanding balance of $580,829.99 under the Agreement, calculated by subtracting the amount paid by Defendants to date from the Purchased Amount. (*Id.* ¶ 13.)

B. Procedural History

Plaintiff filed this action, originally alleging breach of contract, breach of a security agreement and guarantee by Sobier, unjust enrichment, account stated, and fraud, on September 17, 2013. (Doc. No. 1.) That same day, Plaintiff filed an *ex parte* application for a temporary restraining order and for an order directing Defendants to show cause why a preliminary injunction should not be entered freezing Defendants' assets. (Doc. No. 2.) The Court denied the application in full on October 2, 2013. (*Id.*) Subsequently, Plaintiff amended the complaint twice – on December 6, 2013 (Doc. No. 17) and February 25, 2014 (Doc. No. 22) – and attempted to amend a third time, though that amendment was not effective due to what appears to have been an administrative failure to attach Defendants' consent to the pleading (Doc. No. 32). The first and second amended complaints dropped Plaintiff's fraud claim.[3] Defendants filed an answer on April 30, 2014, asserting eighteen affirmative defenses including, relevant here, that "the contractual interest on the loan charged to Defendants is in violation of the statutory maximum interest set forth in the New York General Obligations Law, the New York Banking Law[,] and applicable law[,] and constitutes usury, including criminal usury." (Doc. No. 36.) On August 5, 2014, the

---

[3] Confusingly, Plaintiff's summary judgment moving papers refer solely to the original complaint and make no reference to any of the amended complaints. (*See, e.g.*, Pl. Mem. at 2; Affidavit of Matthew Browndorf dated Dec. 2, 2014, Doc. No. 67 ("Browndorf Affidavit"), Ex. 3.) In any event, the only significant difference between the original complaint and the second amended complaint for purposes of the instant motion is that the latter does not include a fraud claim. Because Plaintiff does not move with respect to the fraud claim – or, indeed, reference the fraud claim at all in its moving papers – this difference is immaterial.

Court granted defense counsel's application to withdraw as counsel after Defendants "persistently failed to pay" legal fees, and set a deadline for new counsel to enter a notice of appearance on behalf of the corporate Defendants. (Doc. No. 45.) After two adjournments of this deadline, new counsel appeared for all Defendants on September 30, 2014. (*See* Doc. No. 53.) On November 4, 2014, the Court issued an Order setting a briefing schedule for Plaintiff's contemplated motion for summary judgment, requiring Plaintiff to file its motion by December 3, 2014 and directing Defendants to file an opposition by December 30, 2014. (Doc. No. 63.) On December 3, 2014, Plaintiff timely filed the instant motion for summary judgment, together with all moving papers. (Doc. Nos. 65–69.) In the motion, Plaintiff seeks summary judgment on its claims for breach of contract, breach of Sobier's guarantee obligation, account stated, and unjust enrichment. Plaintiff also seeks the dismissal of Defendants' affirmative defenses, $580,829.99 in damages, and $268,783.35 in attorneys' fees under the Agreement's fee-shifting provision. Defendants have not filed any opposition.

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The fact that a party, like Defendants in the present case, fails to file an opposition to a motion for summary judgment "does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). "Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 244. However, "the mere *possibility* that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (emphasis added); *see*

5

*also RTC Mortgage Trust 1995-S/N1 v. Polmar Realty, Inc.*, No. 91-cv-6685 (SAS), 1996 WL 689281, at *4 (S.D.N.Y. Nov. 27, 1996) (noting that affirmative defenses, "without any additional supporting evidence, are legally insufficient to preclude the imposition of summary judgment").

III.   DISCUSSION

As noted above, Plaintiff moves for summary judgment with respect to its claims for (1) breach of contract against C Care, (2) breach of guarantee against Sobier, (3) account stated against all Defendants, and (4) unjust enrichment against all Defendants.  Plaintiff also seeks an order dismissing Defendants' affirmative defenses, purportedly "pursuant to [New York] C.P.L.R. [§] 3211(b)," and separately seeks summary judgment as to Defendants' affirmative defenses. Because the Court concludes that summary judgment in Plaintiff's favor is appropriate as to the first two causes of action, and that summary judgment on these claims would give Plaintiff all the relief that it is due, the Court grants Plaintiff's motion as to those claims and denies the remainder of Plaintiff's motion as moot.  However, because the Court is concerned that the terms of the Agreement may run afoul of New York's criminal usury law, the Court reserves ruling with respect to damages.

A.  Breach of Contract

Plaintiff first seeks summary judgment on its claim for breach of contract against C Care based on C Care's failure to comply with the Agreement.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  Here, as noted above, it is undisputed that (1) Plaintiff and C Care entered into the Agreement, (2) Plaintiff paid the consideration due under the Agreement, (3) C Care failed to make the $35,000 weekly payments due under the Agreement (or the $5,000 due, if the Agreement was effectively modified), and (4) Plaintiff has suffered damages in the amount C

Care has failed to pay. Accordingly, Plaintiff has established each of the elements for its breach of contract claim against C Care, and summary judgment as to liability for that claim is granted.

However, the Court reserves ruling on damages pending a supplemental submission from Plaintiff as to whether the Agreement – though *nominally structured* as a sale of accounts receivable – in fact violates New York's criminal usury law. *See* N.Y. Penal Law § 190.40; *see also Carlone v. Lion & the Bull Films, Inc.*, 861 F. Supp. 2d 312, 321 (S.D.N.Y. 2012) ("Corporations may not assert a civil usury defense in New York, but rather may assert only a criminal usury defense."). "New York's criminal usury statute prohibits a person from knowingly charging interest on a loan at a rate exceeding 25% per annum." *Sabella v. Scantek Med., Inc.*, No. 08-cv-453 (CM) (HBP), 2009 WL 3233703, at *17 (S.D.N.Y. Sept. 25, 2009). The defense of criminal usury requires proof that "the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance." *Funding Grp., Inc. v. Water Chef, Inc.*, 852 N.Y.S.2d 736, 740 (Sup. Ct. 2008), *judgment entered*, (N.Y. Sup. Ct. Apr. 16, 2008). There is a strong presumption against a finding of usury under New York law, and the party seeking to assert it as a defense bears a heavy burden as to all three elements. *See Zhavoronkin v. Koutmine*, 860 N.Y.S.2d 561 (2008). Critically, in assessing a usury defense, the Court must "look to the nature of the transaction and not to the form in determining whether such transaction was usurious." *In re Garcia*, 167 B.R. 341, 347 (Bankr. E.D.N.Y. 1994); *see also In re Gen. Am. Commc'ns Corp.*, 63 B.R. 534, 543 (Bankr. S.D.N.Y. 1986), *rev'd on other grounds*, 73 B.R. 887 (S.D.N.Y. 1987) ("[A] court will go beyond the form of a transaction and examine its substance if it appears that the form is a subterfuge for what would otherwise be a usurious loan.").

Here, as noted above, the Agreement obligated Plaintiff to pay C Care $1,084,850 in exchange for payment of all of C Care's accounts receivable, *or a minimum of $35,000 weekly*,

7

until the Purchased Amount of $1,317,700 was reached.  (*See* 56.1 Stmt. ¶¶ 1–4.)  Looking "beyond the form of [the] transaction and examin[ing] its substance," *In re Gen. Am. Commc'ns Corp.*, 63 B.R. at 543, it could be argued that the Agreement, which obligates Defendants to make a minimum weekly payment *irrespective* of C Care's accounts receivable and subjects Plaintiff to no downside whatsoever aside from the risk that the borrower will fail to make the required payments, is in fact a loan.  Based on the principal amount of $1,084,850 and the required minimum payment of $35,000 per week, the *per annum* interest rate under the Agreement exceeds 30% – well above the criminal usury maximum of 25%.

Of course, it should be noted that usury is an affirmative defense under New York law, and there is a strong argument that Defendants have waived it by failing to participate in this action at this stage.  *See, e.g.*, *Fed. Deposit Ins. Corp. v. Julius Richman, Inc.*, 666 F.2d 780, 781 (2d Cir. 1981) (noting that usury is an affirmative defense); *Reyes v. Carver Fed. Sav. & Loan Ass'n*, 344 N.Y.S.2d 501, 503 (Sup. Ct. 1973) ("It has been established that usury is a personal defense which may be waived by the borrower."); *Barrett v. Conley*, 228 N.Y.S.2d 992, 994 (Sup. Ct. 1962) (holding that defendant's failure to appear constituted waiver of affirmative defense of usury); *see also Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 310 (S.D.N.Y. 2010) (dismissing affirmative defenses as abandoned where defendant did not brief them in opposition to plaintiff's summary judgment motion).  Nevertheless, in light of the complete absence of briefing on this matter, the Court declines to rule at this time as to whether Plaintiff's damages should be reduced pursuant to New York's criminal usury law.[4]  Accordingly, the Court grants

---

[4] If the Court were to find that the Agreement contravened New York's criminal usury law, the Court would nevertheless not void the Agreement *ab initio*, but would rather revise the interest obligation to require a non-usurious rate.  *See, e.g.*, *In re Venture Mortgage Fund, L.P.*, 282 F.3d 185, 190 n.4 (2d Cir. 2002) (noting that there is "no specific statutory authority for voiding a loan that violates the criminal usury statute without violating the civil usury statute"); *Carlone*, 861 F. Supp. 2d at 323 ("The better approach, at least in circumstances like those presented here, is to void only the usurious interest rate, not the entire loan agreement.").

summary judgment in favor of Plaintiff with respect to C Care's liability on the breach of contract claim but reserves on the proper calculation of damages. Plaintiff shall file a supplemental submission addressing the application of New York's criminal usury law to the Agreement by July 30, 2015. The supplemental submission should also apprise the Court as to whether any additional payments have been made by Defendants since December 2, 2014.

### B. Breach of Guarantee

Plaintiff also moves for summary judgment against Sobier for breach of the guarantee she signed. "A guaranty is a collateral promise to answer for the payment of a debt or obligation of another, in the event the first person liable to pay or perform the obligation fails." *New York City Dep't of Fin. v. Twin Rivers, Inc.*, 920 F. Supp. 50, 52 (S.D.N.Y. 1996). "The elements of a claim for breach of guarantee under New York law are (1) an underlying obligation, (2) a guarantee, and (3) failure by the guarantor to make payment in accordance with the terms of the guarantee." *Diller v. Schick*, No. 96-cv-4140 (AGS), 1998 WL 91099, at *2 (S.D.N.Y. Mar. 2, 1998). Here, the guarantee signed by Sobier unconditionally required Sobier to perform C Care's obligations under the Agreement in the event of a breach by C Care. As noted above, Plaintiff fully performed, Defendants failed to make the minimum payments required, and Plaintiff was damaged by this failure. Again, Sobier has offered nothing to contradict these facts. Accordingly, summary judgment must also be granted in favor of Plaintiff as to liability on the breach of guarantee claim against Sobier. However, for the reasons stated above, the Court reserves ruling on damages pending Plaintiff's submission of supplemental briefing with respect to the obligations owed by C Care.[5]

---

[5] As a guarantor, Sobier is limited to the "same usury defense to which the corporation is entitled." *Carlone*, 861 F. Supp. 2d at 321–22. Accordingly, as with C Care, Sobier may assert a criminal, but not civil, usury defense. *See Sabella*, 2009 WL 3233703, at *16 ("[G]enerally, an individual who guarantees a corporate loan may not assert a civil usury defense either.").

C. Account Stated and Unjust Enrichment

Plaintiff also seeks summary judgment on its claims for account stated and unjust enrichment. To recover on a claim for an account stated under New York law, a plaintiff must show that: "(1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated." C*amacho Mauro Mulholland LLP v. Ocean Risk Retention Grp., Inc.*, No. 09-cv-9114 (SAS), 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010) (alteration and internal quotation marks omitted); *see also Rand Rosenzweig Smith Radley Gordon & Burstein, LLP v. Berger*, 669 N.Y.S.2d 555, 555 (1998) ("[R]eceipt and retention of an obligee's accounts, without objection within a reasonable time, and agreement to pay a portion of the indebtedness, gives rise to an actionable account stated."); *Abbott, Duncan & Wiener v. Ragusa*, 625 N.Y.S.2d 178, 178 (1995) ("An account stated is an account, balanced and rendered, with an assent to the balance either express or implied"). A claim for unjust enrichment requires "proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

Each of these claims is duplicative of the breach of contract claim here, since there is an enforceable agreement and the same damages are sought. *See Staudinger+Franke GMBH v. Casey*, No. 13-cv-6124 (JGK), 2015 WL 3561409, at *9 (S.D.N.Y. June 8, 2015) (dismissing account stated claim where same remedy sought under both breach of contract and account stated); *Media Tenor Int'l AG v. Medco Health Solutions, Inc.*, No. 13-cv-7223 (DLC), 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) ("If plaintiff can prove an enforceable contract, then it will be able to recover under that cause of action, and the account stated claim can be dismissed." (internal quotation marks omitted)); *Nat'l Westminster Bank PLC v. Ret. Care Assocs., Inc.*, No. 98-cv-6023 (JSM), 1999 WL 239677, at *4 (S.D.N.Y. Apr. 23, 1999) ("Where there is an enforceable

10

written contract governing the particular subject matter, the claims based on quasi-contract theories, such as unjust enrichment . . . , can be dismissed because they are duplicative of the breach of contract claim."). Moreover, Plaintiff may not circumvent New York's usury laws through an account stated claim, *see In re Falk*, 83 F. Supp. 817, 821 (S.D.N.Y. 1949), *aff'd sub nom. Falk v. Levy*, 180 F.2d 562 (2d Cir. 1950), and it has set forth no basis for its unjust enrichment claim that is not duplicative of its breach of contract and breach of guarantee claims.

Accordingly, because the Court has already found that Defendants are liable for breach of contract and guarantee, and because unjust enrichment and account stated would be duplicative of those claims, the Court denies Plaintiff's motion for summary judgment as to the account stated and unjust enrichment claims and dismisses those claims *sua sponte*.

D. Dismissal of Remaining Affirmative Defenses

Because the Court has already found Defendants liable to Plaintiff, Plaintiff's motion for summary judgment as to the seventeen affirmative defenses other than usury, as well as the motion to dismiss those same defenses pursuant to Federal Rule of Civil Procedure 12(f), is moot.[6] *See E. Sav. Bank, FSB v. Ferro*, No. 13-cv-5882 (SJF) (GRB), 2015 WL 778345, at *4 (E.D.N.Y. Feb. 24, 2015) (citing *C.A. Venezolana De Navegacion v. Joseph Vinal Container Corp.*, No. 86-cv-8339 (RWS), 1987 WL 7377, at *3 n. 1 (S.D.N.Y. Feb. 20, 1987) ("[Plaintiff's] further motion to strike the First Affirmative Defense is made moot by the granting of [plaintiff's] motion for summary judgment."); *Am. Home Assurance Co. v. CSX Lines, Inc.*, No. 02-cv-8779 (LAP), 2005 WL 735041, at *1 n.1 (S.D.N.Y. Mar. 18, 2005) ("[B]ecause the summary judgment motion and Rule 12(f) motion implicate the same issues, facts and case law, a ruling on one will necessarily

---

[6] While the part of the motion seeking the dismissal of Defendants' affirmative defenses is styled as a motion pursuant to New York C.P.L.R. § 3211(b), the Court must apply federal law to procedural questions. *See Hanna v. Plumer*, 380 U.S. 460, 473 (1965).

11

decide the other.")); *Dayton Superior Corp. v. Spa Steel Products, Inc.*, No. 08-cv-1312 (FJS) (RFT), 2010 WL 3825619, at *5 (N.D.N.Y. Sept. 24, 2010) ("Since the Court has granted Plaintiff's motion for summary judgment, Plaintiff's motion to strike Defendant's affirmative defense for failure to state a claim is moot."). Accordingly, the motion for summary judgment and for dismissal pursuant to Rule 12(f) is denied as moot insofar as it requests the dismissal of Defendants' affirmative defenses other than usury, and denied pending the submission of supplemental briefing as to usury.

### E. Attorneys' Fees

Plaintiff also seeks attorneys' fees in the amount of $268,783.35 under the Agreement's fee-shifting clause, pursuant to which Defendants are liable for "all reasonable costs" incurred by Plaintiff associated with a breach of the Agreement and the enforcement of Plaintiff's remedies thereunder, including reasonable attorneys' fees. (*See* 56.1 Stmt. ¶ 12; Agreement, Terms and Conditions, ¶¶ 1.1, 3.3.) "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Once it is determined that attorneys' fees are recoverable, however, the Court must determine their reasonable amount. *See McGuire v. Russell Miller*, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993) ("[I]f the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees."); *Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (internal citation omitted) ("[C]ourts must scrutinize fee requests to ascertain whether they are reasonable."). "In particular, a court should ask whether the fee arrangement is 'grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement,'" and should consider factors that "include 'the difficulty of the questions involved; the skill required to handle the

problem; the time and labor required; the lawyer's experience, ability, and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" *Weiwei Gao v. Sidhu*, No. 11-cv-2711 (WHP) (JCF), 2013 WL 2896995, at *5 (S.D.N.Y. June 13, 2013) (quoting *Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 20 (2d Cir. 1992); *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)).

Here, the only thing submitted by Plaintiff bearing on attorneys' fees is a single paragraph of an affidavit from Plaintiff's counsel stating, in complete form: "The Firm was retained by Plaintiff in the above entitled matter on June 24, 2013 pursuant to a written engagement (the 'Engagement') under which the Firm agreed to a contingency fee of thirty three percent (33%) of the total recovery obtained on behalf of Plaintiff." (Browndorf Affidavit ¶ 2.) Obviously, this is not a sufficient basis for a determination that the attorneys' fees sought are *reasonable* in this action. Indeed, the Court is highly skeptical that attorneys' fees in the amount of $268,783.35 would be reasonable here given the relatively short duration of the representation and the simple nature of the legal and factual issues involved. Accordingly, by July 30, 2015, Plaintiff shall file a submission attaching contemporaneous billing records and addressing the factors relevant to a determination of the reasonableness of attorneys' fees, including counsel's customary hourly billing rate.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiff's motion for summary judgment is GRANTED as to liability with respect to the breach of contract and guarantee claims, but DENIED with respect to the remainder of the motion. IT IS FURTHER ORDERED THAT, by July 30, 2015, Plaintiff shall file a submission (1) addressing the issue of criminal usury, its applicability to the Agreement, and Defendants' potential waiver of the defense; (2) apprising the Court as to whether Defendants have remitted any additional payment since

December 2, 2014; (3) addressing the factors relevant to a determination of reasonable attorneys' fees; and (4) attaching contemporaneous billing records setting forth the hours worked and customary fees charged by Plaintiff's counsel.

SO ORDERED.

Dated:   July 15, 2015
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE